McLemore *et al. v.* Yocona Tallahatchie Drainage Dist.
No. 1.

[91 South. 390.  No. 22362.]

1. DRAINS. *Statute for extension of districts so as to embrace adjoining or "adjacent lands" held not to authorize extension embracing lands fifty miles away.*

   Chapter 281, Laws of 1920, authorizing extension of drainage districts so as to embrace adjoining or adjacent lands, does not authorize an extension embracing lands lying about fifty miles away from original district.

2. DRAINS. *"Adjacent lands" within statute providing for extension of districts defined.*

   Adjacent lands, under the said act, are those lying close by, near at hand, adjoining, or contiguous, to be benefited by annexation to an original district.

APPEAL from chancery court of Panola county.

HON. J. G. McGOWAN, Chancellor.

Proceeding for extension of Yocona Tallahatchie Drainage District No. 1.  From a decree extending the boundaries of the district, A. G. McLemore and others appeal. Reversed and dismissed.

*Samuel L. Gwin* and *E. L. Mounger,* for appellant.

The question is, can the statute be strained to the construction that this vast territory containing fifteen times the area of the original district and extending for sixty miles therefrom be termed adjacent or adjoining the original district?

The construction of the chancellor was that inasmuch as every grain of sand and particle of clay is adjacent to every other grain of sand or particle of clay next to it, and moving outwardly from the original district, every foot

of land is adjacent and adjoining to every foot just passed, and every step outwardly is adjacent and adjoining to every step just taken, therefore, the whole is adjacent and adjoining and would be so were it to reach to Vicksburg, and by the same token it would be equally true were it to be claimed to reach to New Orleans, or Texas, or Mexico, or South America, since adjacent and adjoining are terms which are not necessarily limited by arbitrary state lines. If the mouth of this floodway at the southern end of the proposed extension two miles above Greenwood, is adjacent and adjoining to the original district, then Belen is adjacent and adjoining to New Orleans, Maine to California, and Seattle to Key West.

Of course there is a limit to the matter, and the limit is the consideration of the purpose of the use of these terms in the light of common sense and common experience.

In view of the numerous and pertinent citations of authority by the learned counsel for the other appellants in this case, and the intensity with which many of the legal questions involved in the case have been recently the subject of investigation by the court, I have refrained from burdening the court with still further citation of authority, indulging the hope that I may be pardoned for having submitted to this learned and honorable court, a citeless brief.

*Whittington & Osborn,* for B. F. Dulweber, appellant.

Lands of the appellant not adjoining and adjacent. The word "adjacent" has been defined as "lying near to, but not actually touching, in the vicinity of." It is sometimes used as synonymous with adjoining. The word "adjacent" means "contiguous, touching, in actual contact, with." Am. & Eng. Cyc. of Law, pages 633, 634 and 635.

The meaning of these words is to be determined by the context and by the connection in which they are used. For instance, "adjacent" has been held not to be equivalent to "adjoining," and timber land nearest to the line of the road must be held to be neighboring timber land, even

although there may intervene large tracts of land not timbered, and it has been held that even though the timber be more than one hundred miles from the defendant's road, that it is nevertheless adjacent where there is no timber intervening and no timber lands intervening.  Am. & Eng. Cyc. of Law 1, page 635.  But in speaking of lands adjoining the ocean, the court has held that this means that the lands that lie next to or are in contact with excluding the idea of intervening space.  1 Am. & Eng. Cyc. of Law, page 636.

The word "adjacent" is defined by Webster and other lexicographers to mean "to lie near," "close, or contiguous." "Adjoining" and "adjacent" seem to have no arbitrary meaning must be determined by the object sought to be accomplished by the statute in which it is used. *People* v. *Keechler*, (Ill.), 62 N. E. 527.

It could not have been the intent of the legislature to authorize lands to be annexed as adjacent and adjoining unless these lands were benefitted by the improvements that were projected in the original district, and yet it is proposed to annex under the guise of adjoining and adjacent lands situated fifty miles away from the original district.  By the same process of reasoning, the territory down to Vickburg might be annexed, and by this same process of so-called reasoning, the territory to the south on the Mississippi might also be annexed under the guise of adjoining and adjacent lands.

The words "adjoining" and "adjacent" are defined in 1 Cyc., page 765.  In this connection, see the construction placed upon the words "adjoining" and "adjacent". by the courts of other states.  *Wombley* v. *Wright County Supervisors*, 108 Ia. 232, 78 N. W. 824; 57 Minn. 526, 59 N. W. 972, 25 L. R. A. 755; *Denver & Rio Grande Railroad Company* v. *U. S.*, 124 Fed. 156-160 and 31 Fed. 886; *People* v. *Swearenger*, 113 N. E. 166, 1 Cyc. 764.

Of course we are mindful that our supreme court has decided that the public health is to be considered, as it was considered in the case of *Leovy* v. *U. S.*, 44 Law Ed.

914. But a drainage district cannot be established under the statute merely because it will promote public health. It must be for agricultural purposes and for the public benefit.

*Shands, Elmore & Causey,* for appellee.

Is the land proposed to be annexed, "adjoining" or "adjacent" to the original Yocona Tallahatchie Drainage District Number One? (See section 1, chapter 281, of Acts of 1920). As appears from a map filed in the transcript, the original district and the proposed extension constitute a solid block of land. No land not a part of the district interevenes between one part and any other.

Counsel for Dulweber, in undertaking to state the case most favorably for him, says: "That the land of Dulweber is separated from the Yocona Tallahatchie Drainage District by counties, bayous, streams and miles of distance, but he does not say that it is separated from it by any land, stream, bayou or county which is not itself a part of the district forming the link of contact between the land of Dulweber and the original Yocona-Tallahatchie Drainage District; but at another point in his brief he does say: "The testimony shows that the delta is divided into two sections by the Coldwater, Tallahatchie and Yazoo Rivers and that the problem of drainage east of these rivers extending through the central section of the delta is one involving the control of the flood waters that come from the territory of the hill sections in Mississippi. This problem is different from the problem of drainage in the territory west of these rivers, which is largely the problem of controlling the waters of the Mississippi."

The land owned by Dulweber lies east of these rivers, as does the land in the original Yacona Tallahatchie, and is of the same character. It forms a part of the block of land contiguous to the original Yocona-Tallahatchie, which block of land is sought to be annexed.

I think that the proper application of the words "adjacent" and "adjoining" has been set out in the case of *People* v. *Keechler*, 62 N. E. 525; *State* v. *City of Kansas City*, 50 Kan. 522, 31 Pac. 1100; *In re Camp Hill Borough*, 142 Pa. 517, 11 Atl. 978; *U. S.* v. *Northern Pac. R. Co.*, 29 Albany Lad J. 24; *Henderson's Lessee* v. *Long*, 1 Cooke, —, 129 Fed. Cas. No. 6,354; 1 Ann. & Eng. Enc. Law (2 Ed.), p. 633; *Miller* v. *Cabell*, 81 Ky. 184; *In re Municipality No. 2 for opening Roffignac St.*, 7 La. Ann. 76; *Saddler et al.* v. *Appeal of Brinton et al.*, 21 Atl. 978; *Kent* v. *Perkins*, 36 Ohio State Reports, 639.

The case of Drainage District Number Three, reported in 123 N. W. at page 1049, while not undertaking to define specifically the words "adjacent or adjoining" announces the principle which should govern in cases of this kind. This is a very long case and is a most illuminating one on the whole subject of drainage law, and, I think could be profitably read by any one charged with the duty of determining whether or not certain lands should be embraced within the district.

*Lomax B. Lamb*, for appellee.

When the petition for extension of the original district was filed under chapter 281 of the laws of 1920, which provides as follows: "Section 1. When ten per cent. of the landowners owning lands adjoining or adjacent to any existing drainage district organized under the provisions of chapter 195 of the laws of 1912, and amendments thereof shall petition the boards of supervisors to extend the boundaries of any such existing district, describing generally the region which it is intended shall be embraced within the boundaries of such drainage district as extended, it shall be the duty of the board of supervisors to enter an order upon its minutes directing the commissioners of such drainage district to forthwith proceed to cause a survey to be made, and to ascertain the limits of the region which would be benefited by the proposed system of improve-

ments, and giving a general idea of its character, and the
cost of the drainage and other improvements necessary,
and making such suggestions as to the size of the drainage
ditches, and their location and of levees, dams and pump-
ing stations, if any of such be necessary to properly drain
and protect said territory or if the commissioners may
deem such levees, dams and pumping stations, or any, or
either of them advisable, and to file their reports with the
clerk of the board of supervisors.

It became the duty of the commissioners to cause a
survey to be made, and to make report thereof and recom-
mendation to the court. The statute expressly provides
that lands shown to be benefited by the improvements after
the organization of the district may be taxed to pay for
the improvements and may be included in the district.

If the lands in Quitman county west of Coldwater River
and west of Tallahatchie River are benefited by the im-
provements to be made, they can be assessed and brought
into the district hereafter. No landowner in the district
as established by the chancellor will be injured by the ac-
tion of the chancellor in dismissing, for the time being,
the petition for the inclusion of these lands in the district.

As to the power of the district to tax lands outside of
the district, see Section 7, chapter 269, Laws 1914; Section
4445, Hemingway's Code, also *Barnes* v. *Drainage Commis-
sioners*, 77 N. E. 1124; *Mittman* v. *Farmer*, 142 N. W. 991;
Ann. Cas. 1915C, p. 1.

I respectfully submit that the original district was
properly and legally organized, and was an existing mu-
nicipal corporation at the time of the decree extending it
and now. But if mistaken I submit that the legality of
the organization of the district could only be questioned in
a direct proceeding for that purpose. That the chancellor
had full and complete jurisdiction of all of the lands de-
scribed in decree extending the district which includes the
lands in the original district and lands added thereto, and
that, the decree of June 18, 1921, establishing the district

as extended and enlarged upon the petition presented and proof heard would be valid and good, and the district would be a legally constituted municipal corporation.

Section 33 (A), chapter 269, Laws of 1914; section 4481, Hemingway's Code, provides as follows: "That this act shall be liberally construed to promote the ditching, drainage and reclamation of wet, swampy and overflowed lands, and the collection of assessments hereunder shall not be defeated by reason of any omission, imperfection or defect in the organization of any district, or in the proceedings occurring prior to the judgment of the court confirming assessment of benefits and damages, but said judgment shall be conclusive that all prior proceedings were regular and according to law."

The other questions raised by counsel for appellant will be discussed and argued by other counsel for appellee. I respectfully submit that the decree of the chancellor should be affirmed.

*Gardner, McBee & Gardner, Lowrey & Lamb* and *Shands, Elmore & Causey,* for appellee.

Below, we cite and quote from authorities supporting the views we entertained on the question of what is meant by adjacent. The word "adjacent" is defined by Webster and other lexicographers to mean to "lie near, close or contiguous." It is sometimes said to be synonymous with adjoining, near, contiguous. In some decisions courts have held it to mean, "in the neighborhood or vicinity of;" in others "adjoining or contiguous to." *People* v. *Keechler,* 62 N. E. 525, 527 Ill. 235.

The word "adjacent," even in its strictest sense, means no more than "lying near, close or contiguous, but not actually touching." There are degrees of nearness, and, when you want to express the idea that a thing is immediately adjacent, you have to say so. *Kanifen* v. *Armitage* (U. S.), 117 Fed. 845-851; 1 Words and Phrases (1 Ed.), page 184.

The word "adjacent" means "contiguous, adjoining, lying close at hand, near." The expression, "adjacent," does not at all times mean "abutting," but it is usually synonymous with abutting, adjoining and bordering. *In re Bridge Bonds, Ratliffe Tp., Johnston County,* 128 Pac. 681, 682, 35 Okl. 192 (citing *Wormley* v. *Board of Supervisors of Wright County,* 78 N. W. 824, 108 Iowa, 232.)

It is not essential that property to be adjacent to another when it lies near or close to it, although it is not in actual contact therewith. *Yuba County* v. *Kate Mayes Mining Co.,* 74 Pac. 1049, 1050, 141 Cal. 360. I think that a careful review of all of the decisions shows clearly that there is no certain distance which can be said to be the dividing line between things that are adjacent and things non-adjacent.

In almost every case, which has been reported in America, the court has so declared, and this court, in its opinion, expressly declines to say how far this extension could go and the territory embraced therein be still adjacent; only saying that territory fifty-five miles away from the southern boundary of the original district certainly cannot be held to be adjacent to the original district. *Wormley* v. *Board of Supervisors of Wright County,* 78 N. W. 824; *Bacheldor* v. *United States,* 83 Fed. 986; *United States* v. *Northern Pacific Railroad Co.,* 29 Alb. Law, J., 24; *United States* v. *Lynde,* 47 Fed. 300; *People* v. *Keechler,* from the supreme court of the state of Illinois, reported in 62 N. E. at page 525; *State, etc.* v. *Albany Drainage District,* 234 S. W. 339; *State* v. *Norborne Land Drainage District Company of Carroll County,* 234 S. W. 344.

The court holds that lands appearing from the plat which I file herewith not only are adjacent, but as they are connected up with the original district by this narrow neck, that they are contiguous, a word of no doubtful meaning, its meaning being clearly apparent from its etymology.

If lands are contiguous, such as are set out in the plat of the Norborne Land Drainage District Company where they are connected and adjoin the original district only by

this narrow neck, then certainly the lands embraced without our solid block would be held to be adjacent, a word of less strict meaning than contiguous, which literally means to lie with, or touching.

I wish to also call the attention of this court for whatever it may be worth, to the opinion of Messrs. Wood and Oakley, of Chicago, Illinois, and of Charles & Rutherford of St. Louis, Missouri, both of which firms are regarded as authorities of the highest possible standing on questions of drainage law, their practice being confined almost entirely to passing upon the validity of bond issues of drainage districts for the benefit of purchasers of such bonds.

HOLDEN, J., delivered the opinion of the court.

This suit involves the question of the validity of the extension of the Yocona Tallahatchie drainage district No. 1, appellee, by the addition thereto of adjoining or adjacent lands as authorized by chapter 281, Laws of 1920, which provides for the extension of the boundaries of drainage districts organized under the provisions of chapter 243, Laws of 1916, chapter 269, Laws of 1914, and chapter 195, Laws of 1912, so as to embrace adjoining and adjacent lands in such drainage districts. The appeal particularly brings before us for consideration and construction section 1 of said chapter 281, Laws of 1920, which will be hereinafter set out.

The appellee, Yocona Tallahatchie drainage district No. 1, embracing about thirty-four thousand acres of land, was established and organized by a decree of the chancery court of Panola county, in April, 1917, under the provisions of chapter 195, Laws of 1912, and subsequent amendments thereto. No improvements were planned or made in the district and nothing was attempted to be done until August, 1920, when a petition was filed by the owners of adjoining and adjacent lands praying the chancery court that their lands, comprising about four hundred and ninety-three thousand acres, be added or annexed to the appellee drain-

age district, as authorized and provided by said chapter 281, Laws of 1920. It appears that the petition was signed by a requisite number of landowners in the new territory to be added to the appellee district; the petition seems to have been signed also by the landowners embraced in the old district.

Upon the filing of the petition in the chancery court, the lands being in several counties, notice was published as required by the act, and, on a hearing of the cause before the chancellor, it was adjudged and decreed, over the protest of appellants, that the petition be granted and the lands in the new territory be added to the appellee drainage district. From which decree, extending the boundaries of the appellee district so as to embrace the lands of petitioners, this appeal is prosecuted.

The proposed extension of the boundaries of the appellee drainage district, so as to embrace the lands named in the petition, involves, in our opinion, a gigantic project, comparatively speaking, which should receive most serious consideration by us as a pertinent fact, and by all others concerned; for its purpose, if carried out, may result in great good or total disaster to the landowners comprising the district.

The proposal, in substance, is that a floodway be constructed and established extending from the appellee, original district, in a southerly direction for a distance of about fifty-five miles, the width being about one mile, a levee seventeen feet high on one side, with the hills upon the other, which artificial river or drainage basin would, it is calculated, carry the flood waters of the Tallahatchie and other rivers and streams confluent and moving farther south to a point a few miles north of the city of Greenwood, the object being to control the flood waters by a gate system, channels, silt basins, etc., so as to drain and protect the adjacent lands from overflow. The plan purposes a canal and other means best understood by the engineers in charge of the survey, all of which was included in the method to protect the lands against overflows and to de-

liver the overflow waters to the rivers at the south end of the district, without damage to landowners outside and below the district.

It appears from the record the cost of the project will be so large as to necessitate a tax of at least eighteen dollars per acre on the lands in the district, or, as approximately estimated, a total of more than nine million dollars, the payment of which, of course, would be secured by a lien upon the lands involved. This record reflects to our minds, that the cost of construction would ultimately be much greater than the estimate mentioned, and the subsequent maintenance, together with the interest upon the bonds necessary to be given to pay for the construction, would impress a considerable charge against the landowners.

Of course, we are not concerned alone with the question of the cost to the landowner, but the law authorizing the extension of a district provides that such "proposed improvements must be to the public benefit and to the interest of the land and the owners thereof;" and the question of cost also concerns us somewhat with reference to the initiation of the project embracing so many "adjacent" landowners at such a great distance from the original district to which they are to be added. However, we shall go no further into this feature of the case, because the decision we have reached will rest solely upon another ground.

The appellant landowners in the added territory appeared and objected to the annexation of their lands to the appellee drainage district. There were also a large number of landowners in the proposed added territory that made no objection, nor did they consent to the addition of their lands. It was argued below and here that the proposed channel or drainage basin would destroy the value of considerable land together with improvements thereon, even some villages, and a diversion of the flood waters would result in damages to owners outside of the district at the lower end. These are questions of policy that only concern those connected with the proposed drainage scheme.

The appellants present many serious questions for reversal of the decree of the lower court. But we shall consider and determine but one, which will result in a reversal, and, since the other questions may never arise again, it is unnecessary to pass upon them at this time.

A construction of section 1 of chapter 281, Laws of 1920, with regard to the meaning of the act wherein it provides that "when ten per cent. of the landowners owning lands adjoining or adjacent to any existing drainage district," etc., will be decisive of this appeal. Said act provides as follows:

"Drainage Districts—Enlargement of Boundaries to Embrace Adjacent Lands. Hemingway's Code, sections 4484, 4485.

Section 1. Be it enacted by the legislature of the state of Mississippi, when ten per cent. of the landowners owning lands adjoining or adjacent to any existing drainage district organized under the provisions of chapter 195, of the Laws of 1912 and amendments thereof shall petition the board of supervisors to extend the boundaries of any such existing district, describing generally the region which it is intended shall be embraced within the boundaries of such drainage district as extended, it shall be the duty of the board of supervisors to enter an order upon its minutes directing the commissioners of such drainage district to forthwith proceed to cause a survey to be made, and to ascertain the limits of the region which would be benefited by the proposed system of improvements, and giving a general idea of its character, and the cost of the drainage and other improvements necessary. . . .

It is contended by appellants that the act does not authorize the annexation of the lands in the new territory, because they are not *adjacent* lands.

The exact problem presented for our solution is this: What was the intention of the legislature in the use of the words *"adjoining or adjacent"* landowners? In other words: What did the lawmakers mean or in what sense did they intend to use these words in the act? We have no

trouble in understanding the act in authorizing the addition of "adjoining" lands, but the difficulty comes in determining what is meant by "adjacent" lands. Does the act mean that lands lying as far away as fifty miles from the original district are adjacent lands and may be added to the old district, or was it in the legislative mind to authorize the addition only of those lands lying close to or near by the original district?

We have carefully reviewed all the authorities within our command on this question, and, while the meaning of the word "adjacent" as commonly used varies to some extent according to the context or the relative way in which it is used in connection with the subject-matter, nevertheless we are thoroughly convinced that its use in the connection here presented does not mean that lands lying fifty miles away from the small original drainage district are adjacent lands. The best definition of "adjacent" that we can get from any source is, lying near by or lying close at hand, near, adjoining, or contiguous. Adjoining lands are adjacent, and lands not joining but "lying close by" are adjacent. Therefore it is clear to us the majority of the lands proposed to be added in this case are not adjoining or adjacent as meant by the act authorizing annexation to the old district.

The question will naturally occur: Where is the dividing line between adjacent and nonadjacent lands in such cases? We do not think we are called upon to decide this question, because in this case the lands embraced in the southern part of the territory proposed to be added are so far away from the old district there can be no doubt that they are not adjacent to the district.

We feel reasonably sure the legislature never intended that so large a territory should be added to such a small drainage district; but the purpose of the act was to permit the addition of lands to be benefited lying close by the old district. We think there are many reasons that could be given why the legislature had this limitation in mind, but it is unnecessary to do so. The very fact, as appears in

this case, that the petition seeks to add four hundred and ninety-three thousand acres to a district embracing only thirty-four thousand acres indicates at once an unusual situation, and would be to make "the tail wag the dog" as suggested in the argument of the case. It would, in effect, be to create a new district under the old name.

Such a situation is not impossible, however, and under some circumstances it would probably be permissible for a larger territory to be added to a smaller one, but the conditions, and the legislative intent governing the case at bar, are contrary to this idea. Counsel for the appellee, in their argument, attempt to uphold their view by illustrating with the case of the United States, when composed of the small territory of the Atlantic states, annexing the great western territory which was larger than the territory to which it was added. It is true this was done, but the old territory, while smaller in area, was vastly greater in population, wealth, and in many other respects than the western territory added. Besides this, there is lack of analogy because there was no question of adjacency involved in that case.

In the case at bar the effort is made to add territory fifteen times the size of the old district, and apparently that much greater in importance than the old district. The act of the legislature did not contemplate the extension of drainage districts to such a vast extent and of such grave importance, as that attempted in the case before us. Therefore, the decree of the chancellor is erroneous and must be reversed, and the cause dismissed.

Below we cite and quote from authorities supporting the views we entertain on the question of what is meant by "*adjacent.*"

"The word 'adjacent' is defined by Webster and other lexicographers to mean 'to lie near;' 'close or contiguous.' It is sometimes said to be synonymous with 'adjoining,' 'near,' 'contiguous.' In some decisions courts have held it to mean 'in the neighborhood or vicinity of;' in others 'adjoining or contiguous to.' *People* v. *Keechler*, 194 Ill.

235, 62 N. E. 525, 527.  The word 'adjacent,' even in its
strictest sense, means no more than lying near, close, or
contiguous, but not actually touching.  There are degrees
of nearness, and, when you want to express the idea that
a thing is immediately adjacent, you have to say so.  *Hani-
fen* v. *Armitage* (U. S.), 117 Fed. 845, 851." Words and
Phrases, First Series, vol. 1, p. 184.

"The word 'adjacent' means contiguous, adjoining, lying
close at hand, near.  The expression 'adjacent' does not at
all times mean abutting, but it is usually synonymous with
abutting, adjoining, and bordering.  *In re Bridge Bonds,
Ratliff Tp., Johnston County,* 35 Okl. 192, 128 Pac. 681,
682 (citing *Wormley* v. *Board of Sup'rs of Wright County,*
108 Iowa, 232, 78 N. W. 824) ; *State* v. *Angus,* 83 Conn. 137,
75 Atl. 623, 624.  It is not essential that property, to be
adjacent to a river, should be in actual contact therewith.
A thing is 'adjacent' to another when it lies near or close
to it, although it is not in actual contact therewith.  *Yuba
County* v. *Kate Hayes Mining Co.,* 141 Cal. 360, 74 Pac.
1049, 1050."

The decree of the lower court is reversed, and the cause
dismissed.

*Reversed and dismissed.*