TALLAHATCHIE DRAINAGE DIST. NO. 1 *v.* YOCONA-TALLA-
HATCHIE DRAINAGE DIST. NO. 1.*

(Division B.  Oct. 17, 1927.  Suggestion of Error Overruled Nov. 14,
1927.)

[114 So. 264.  No. 26509.]

1. COUNTIES.  *Boards of supervisors have no implied powers, and can act only through minutes.*

   Boards of supervisors have no implied powers, and can act only through their minutes spread upon the records of their office.

2. DRAINS.  *"Drainage district" is political subdivision of state vested with necessary governmental powers (Hemingway's Code 1927, sections 4946-5003).*

   A "drainage district," under Laws 1912, chapter 195, and amendments (Hemingway's Code 1927, sections 4946-5003) is a political subdivision of the state, created for the purpose of draining and reclaiming wet and overflowed land, as well as to preserve the public health and convenience, and for the accomplishment of those purposes is vested with necessary governmental powers.

3. DRAINS.  *Drainage district accumulating material in attempted annexation of territory had such title thereto as authorized sale to another district (Hemingway's Code 1927, sections 4946-5003, 5019).*

   Where drainage district organized under Laws 1912, chapter 195, and amendments (Hemingway's Code 1927, sections 4946-5003) attempted to extend its boundaries by proceeding under Laws 1920, chapter 281 (Hemingway's Code 1927, section 5019), which proceedings were held to be null and void, the district had sufficient interest and title in and to engineers' reports, surveys, stakes, monuments, maps, and other material secured in at-

tempt to annex additional territory as authorized it to sell and transfer possession thereof to another district consisting of lands sought to be included by extension.

4. DRAINS. *Drainage district had right to purchase material accumulated by another district in attempt to annex territory (Hemingway's Code 1927, section 4955).*

Under Laws 1918, chapter 159 (Hemingway's Code 1927, section 4955), commissioners of drainage district had right to purchase and pay for engineers' reports, surveys, and other material accumulated by another district in attempt to annex territory of which district was composed.

5. APPEAL AND ERROR. *Raising question of validity of contract by drainage commissioners at meeting outside state by insufficient pleas requires presumption that contract was properly executed.*

Where in suit to recover for purchase price of material sold drainage district question of whether contract was void because authorized by meeting of commissioners held outside the state was raised in pleas held to be insufficient in law, it will be presumed, under the rule that a plea is to be taken most strictly against the pleader, that contract was executed within the state and within drainage districts, parties to contract, and signature of all commissioners was sufficient to bind all parties.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 745, n. 71; Counties 15CJ, p. 456, n. 54; p. 466, n. 9, 12; Drains, 19CJ, p. 615, n. 77; p. 627, n. 50; Pleading, 31Cyc, p. 78, n. 95; As to nature and powers of Drainage Districts generally, see 9 R. C. L. 644; 2 R. C. L. Supp. 848; 4 R. C. L. Supp. 618.

APPEAL from circuit court of Tallahatchie county. HON. J. F. DEAN, Special Judge.

Action by Yocona-Tallahatchie Drainage District No. 1 against Tallahatchie Drainage District No. 1. Judgment for plaintiff, and defendant appeals. Affirmed.

*Percy & Percy, Caldwell & Caldwell, Hays & Whitten, R. C. McBee,* and *John M. Kuykendall,* for appellant.

I. *The plaintiff had no title to or interest in what it attempted to sell.* The acts of appellee in employing engineers making, surveys and accumulating data were all *ultra vires.* It had no power to purchase or pay

for such information or to acquire it. It was an expenditure by the district which any taxpayer could enjoin. The issuance of bonds in order to raise money for that purpose would be invalid. The bonds, if issued, even in the hands of an innocent purchaser would be invalid and the payment of same could be enjoined. 19 R. C. L. 1018; *Citizens Loan Ass'n* v. *Topeka,* 22 L. Ed. 455; *Lewis* v. *Shreveport,* 27 L. Ed. 728; Freeman on Judgments (3 Ed.), 117; *Lake* v. *Perry,* 95 Miss. 550-73.

The appellee's power and rights are purely statutory. It is a creature of the statute. By what statute did it acquire the data which it proposes to sell? Our court says: By none and in violation of statute law.

By what authority does it propose to sell that to which it never acquired title? The appellee in making out its case disclosed to the court that it never had lawfully acquired the property which it contracted to sell, and that it is now seeking affirmative aid of a court of justice in the consummation of a wholly illegal course of conduct. *Southern Reality Co.* v. *Tchula Coop. Stores,* 114 Miss. 322; *Dixie Rubber Co.* v. *Cato,* 110 So. 670.

II. *The defendant had no power to make the contract sued on.* If the appellant had power to make such a contract that power must be found in the statute which created it. *Standard Oil Co.* v. *Nat'l Surety Co.,* 107 So. 559.

A board of supervisors can act only in the manner authorized by law. *Jefferson Co.* v. *Grafton,* 74 Miss. 435. The power to act must be clearly given by statute. *Crittenden* v. *Booneville,* 92 Miss. 277.

And so a municipality has no power except that conferred by statute. *Hazlehurst* v. *Hayes,* 96 Miss. 656.

The commissioners of a drainage district can exercise only such powers as are expressly conferred or necessarily implied from the powers which have been ex-

pressly granted. *Keystone Drainage Dist.* v. *Drainage Dist.*, 180 S. W. 215. The drainage acts are complete within themselves and unless a right or power is there given, it cannot be looked for elsewhere. *Bogue Hasty Drainage Dist.* v. *Napanee Plantations Co.*, 118 Miss. 493.

What is the power given this drainage district in regard to acquiring maps, plans and engineering data? The Laws of 1918, chapter 159, which is amendatory to the Acts of 1914, chapter 269, provides that the board of commissioners may employ such engineers and other agents as may be needful; such engineers to give bond for the faithful performance of their duties, etc., and shall provide for reasonable compensation to such engineers. The board is authorized to prepare plans and to procure estimates as to the cost thereof from a competent engineer or engineers. We submit that no authority is found here authorizing the purchase from another drainage district of maps, plans, data, etc., complied in some other proceedings. No such authority is expressed and no such authority is implied from the language used. Assuming that such a purchase was advantageous to the district, nevertheless the commissioners were without authority to make it. *Wrought Iron Bridge Co.* v. *Board of Commissioners*, 48 N. E. 1050.

The statute in respect to the matter sought to be contracted for entered into the contract. *Standard Oil Co.* v. *Nat'l Surety Co.*, 107 So. 559; *Mound City, etc., Co.* v. *Miller*, 170 Mo. 240, 70 S. W. 721; *Cincinnati* v. *Public Utilities Com.*, 98 Ohio St. 320; *Hord* v. *State*, 79 N. E. 1916, 167 Ind. 622.

Both parties to the contract being governmental corporations, the rule of *pari delicto* has no application. *Noxubee Hdwe. Co.* v. *Macon*, 90 Miss. 636; *Edwards Hotel Co.* v. *Jackson*, 96 Miss. 547-75.

Without statutory power the appellant district had no authority to make this contract. A statutory power

for the contract cannot be found in section 4442-C, Hemingway's Code Supplement.

III. *The contract is invalid and void because the meeting of the plaintiff district and of the defendant district, at which the contract was entered into, was held outside of the state of Mississippi and no minutes were made of said meeting, and no meeting was held within the state ratifying or approving said contract.* Section 4441-A fixes the term of drainage commissioners and further provides: "They shall hold their meetings at a time and place in the county or counties in which any part of the district is situated upon the call of the president."

A contract of a governmental corporation, a political subdivision of the state (and there is no reason to differentiate between a drainage district and a municipality), must be made or authorized at a legal meeting of the corporate body. *Kidder* v. *McCallahan,* 126 Miss. 1888. Even a chancery court is without jurisdiction, by consent of the parties, to make a contract for a board of supervisors. The contract must be made as provided by law or it is void, so void as being incapable of ratification. *C. & G. Railway* v. *Carothers,* 129 Miss. 645. A corporation must act as a board. *Star Mills* v. *Bailey,* 140 A. S. R. 370, 3 Fletcher on Corporations, 3044.

In a number of cases the supreme court of Illinois has held that the powers of drainage commissioners are confined to the territorial limits of the district and must be exercised within its borders and all acts done at meetings held outside of the borders are null and void. *People* v. *Camp,* 243 Ill. 154, 90 N. E. 215; *People* v. *Carr,* 231 Ill. 502, 83 N. E. 269; *People* v. *Schwank,* 237 Ill. 40, 86 N. E. 631; *People* v. *Anderson,* 239 Ill. —, 87 N. E. 1019; *People* v. *Hepler,* 240 Ill. 196, 88 N. E. 491. See, also, 3 Fletcher on Corporations, 2776. Corporate acts of a corporate body without the state are void. *Aspenwall* v. *O. & M. R. R. Co.,* 83 Am. Dec. 329.

We are at a loss to conjecture a reason, in the face of a statute providing that meetings shall be held in the county where the district is located, for holding that a meeting held in the city of Memphis is valid, but that a meeting of the board of supervisors not held in the courthouse as required by statute, is void. Yet in a series of decisions, our court has applied this rule as to meeting of boards of supervisors. *Harris* v. *State,* 72 Miss. 960; *Lester* v. *Miller,* 76 Miss. 317; *Lake* v. *Perry,* 95 Miss. 573; *Barrett* v. *School Dist.,* 123 Miss. 377; *Board* v. *O'Neal,* 130 Miss. 57; *Jones* v. *State,* 1414 Miss. 894.

It seems needless to add that the courts of other states have cited the Harris case with approval. *Blanchard* v. *Ladd,* 67 Pac. 131; *Farmers Cotton Oil Co.* v. *Brooke & Co.,* 82 S. E. 373; *McCullough* v. *Scott,* 109 S. E. 789. Upon all three grounds set forth, the contract was void and the judgment of the lower court should be reversed.

*Shands, Elmore & Causey, E. O. Sykes, Wilson, Gates & Armstrong* and *Lowrey & Lamb,* for appellee.

I. Appellant argues that the attempt to annex this territory was null and void and beyond the jurisdiction of the court, and that the acts of the appellee district in acquiring this data were *ultra vires* and that it had no power to purchase or pay for it. There are several answers to this contention.

(1) The alleged *ultra vires* act constituted no part of the sale of this property to appellant. That transaction was completed and closed before the contract here in question was made. It therefore makes no difference so far as this lawsuit is concerned in what manner the appellee acquired title to this property.

(2) Even if the alleged *ultra vires* act was committed in the sale of this property by appellee to ap-

pellant, the appellant could not retain and use the fruits of this contract and decline to pay the consideration.

(3)   The chancery court acquired jurisdiction over this appellee; and under section 4487a, Hemingway's Supplement, ordered and 'authorized .the expenditure by this appellant of all monies spent for this data. This section provides that this money shall be paid as the work progresses. All of this property therefore under this section belonged to appellee.

(4)   The appellant as the purchaser, cannot complain of any *ultra vires* act of the appellee, the seller, by which act the appellee became the owner of this property. The alleged *ultra vires* act is a mere incident in the plaintiff's case. This doctrine is repeated in the case of *Dixie Rubber Co.* v. *Catoe,* 110 So. 670, and further illustrated in *Robertson* v. *Country Club,* 212 Ala. 621; *Southern Realty Co.* v. *Tchula Co-Operative Store,* 114 Miss. 322. We are not asking any court to aid us in doing that which is forbidden under the law. *Middleton* v. *Georgetown Mercantile Co.,* 117 Miss. 134 is in point. See, also, *Wall* v. *Darby,* 132 Miss. 94; *Kerfoot* v. *Bank,* 218 U. .S. 281; *Watts Mercantile Co.* v. *Buchanan,* 92 Miss. 540; *Martin* v. *Broadus,* 1 Freeman's Chancery Reports, 35; *Board of Trustees 'of Prairie Lodge* v. *Smith,* 58 Miss. 301; *County* v. *R. R. Co.,* 85 Miss. 629; *City of Natchez* v. *Mallery,* 54 Miss. 499; *R. R. Co.* v. *R. R. Co.,* 66 N. H. 100, 9 A. S. R. 582; 19 R. C. L. 1062, section 351.

There is nothing in the law making it illegal for a drainage district to own property of this kind. It has been to a great expense in this matter and it would be a great hardship on the appellee if it could not sell the property thus acquired to districts which need and can use it. In fact, we might add the districts have already used it.

Under the authorities above cited the right or title of the appellate to the property sold appellant and its right to pay therefor can be questioned only in a direct

proceeding by the state or some one whose property was affected or whose taxes increased by these acts. *Bank* v. *Archer,* 8 S. & M. 151.

II. *The next question argued by counsel for appellant is:* "*The defendant had no. power to make the contract sued on.*" In addition to the express powers granted by statute to drainage districts, they have by implication such additional powers as are necessary for the due efficient exercise of the powers expressly granted or as may be fairly implied from the statute granting these express powers. Throop on Public Officers, section 542, page 515.

The power to make this contract is expressly granted under the second paragraph of section 4442, Hemingway's Supplement, sub-section c thereof, expressly conveying this power of purchase, having been but once construed by this court. See *Equen* v. *Aterbury,* 121 Miss. 76.

The legislature is vested with power to create drainage districts. It delegates the power to a subdivision of the state and makes it a corporation, a subdivision of the state. It is not strictly a municipal corporation. *Robinson* v. *Thomas,* 118 Miss. 423. It is not like a board of supervisors which can speak only through its minutes. It can be held liable on implied contracts as well as express contracts. These drainage laws are to be liberally construed in order to effect the intention of the legislature in establishing drainage districts.

The contention of counsel that the question of costs cannot be made the subject of agreement or contract as in this case is completely answered by the decision of the court in *Eastman* v. *Adams,* 101 Miss. 460. See, also, *Robertson* v. *Weston Lbr. Co.,* 124 Miss. 626.

There is no statute requiring a drainage board to speak only through its minutes as there is with reference to boards of supervisors. The authorities therefore cited by appellants relating to acts of boards of supervisors and municipalities are not in point. The

difference is shown by a comparison of the two opinions of our court in *Tally* v. *Mayson,* 116 Miss. 597; and *Jones Bayou* v. *Sillers, Clark & Sillers,* 129 Miss. 13.

III. *Appellant alleges that the only meeting of the commissioners which authorized the execution of the contract was held beyond the borders of the drainage district and of the state, and that the contract was executed in pursuance of a pretended meeting held beyond the confines of the drainage district and of the state, and that the acts of this meeting were made null and void.*

It is not alleged that the contract was executed outside of the drainage districts or outside of the state. Therefore under the familiar rule that the allegation of all pleadings is taken most strongly against the pleader, the court will presume that the contract here sued on was executed within the state of Mississippi and within the confines of the drainage districts of the commissioners or to put it in another way, the court will presume that the commissoiners of the appellee district signed, sealed and delivered the contract within the cofines of their district, likewise that the Commissioners of the other two districts executed the contract within their respective districts. Nowhere in the drainage laws under which these districts were organized is there any requirement for the entering of its orders on any minutes. The law is different by statute and decision with reference to boards of supervisors as is above pointed out. We submit, therefore, that it is not necessary for any such contract to be entered on the minutes of the drainage district. The case of *Tally* v. *Mayson,* above cited is decisive on this point.

The Illinois cases cited by counsel for appellant are not in point because from a reading of them it is evident that the Illinois drainage statutes require records to be kept by drainage boards of their meetings, etc., just as is the case with our boards of supervisors. Our drainage laws contain no such requirements.

The real point made, of course, is that in order for such commissioners to contract, the commission must have a formal meeting in the district and keep formal minutes of the meeting. We deny the point so far as it has reference to the sort of case here presented. The analogy to the board of supervisors does not exist.

If the purpose of the meeting had been judicial or *quasi-judicial,* or the act performed had been of that character, then a meeting at the regular places appointed would have been required in order to give the character of a judicial proceeding to the act to be performed.

This contract, however, was for the mere purchase of material things necessary to have the district function. All the commissioners bought plans, maps, surveys, and physical things necessary and appropriate to the digging of ditches and all of them went to the place where those matters could be most freely discussed. They were merely ministerial acts which might well have been committed, and are often committed, to an agent; that is, to go to the market where the things to be brought are to be seen and shown, to examine them, compare them, secure prices and terms on them, and buy them.

It is plain from the rules of law laid down in *Eastman & Gardner* v. *Adams,* 101 Miss. 46; *State* v. *Fragiacomo,* 71 Miss. 417; *Robertson* v. *Western Lbr. Co.,* 124 Miss. 626, that whenever commissioners or other officers are dealing with an unliquidated amount, they can agree on that amount. So, we insist that with or without the statute which required them to buy these particular maps and plans that they had power without formal meeting to all of them to buy these plans and contract therefor. The sharp distinction that we make between this case and the authorities cited and the point contended for is that in this case no formal meeting anywhere was required.

ANDERSON, J., delivered the opinion of the court.

Appellee, Yocona-Tallahatchie drainage district, brought this action in the circuit court of Tallahatchie county against the appellant, the Tallahatchie drainage district, to recover of the latter the sum of one hundred thirty thousand dollars, the purchase price of a lot of engineer's reports, surveys, stakes, monuments, tents, trucks, camp outfits, surveyor's instruments, and other personal property, sold by appellee to appellant. There were no issues of fact to be tried by a jury, the facts being embodied in the pleadings of the parties. The trial therefore was before the court without a jury, and resulted in judgment for the appellee for the amount sued for. From that judgment, appellant prosecutes this appeal. For convenience, appellant will be referred to as ''Tallahatchie district,'' and appellee as ''Yocona district.''

The Yocona district was organized by decree of the chancery court of Panola county in 1917, under the provisions of chapter 195, Laws of 1912, and amendments thereto (Hemingway's 1927 Code, sections 4946-5003, inclusive). By a proceeding had in August, 1920, under chapter 281, Laws of 1920 (Hemingway's 1927 Code, section 5019), the Yocona district attempted to extend its boundaries so as to embrace about four hundred ninety-three thousand acres of additional land. *McLemore* v. *Drainage District,* 129 Miss. 97, 91 So. 390, held these extension proceedings to be null and void. Large expenses were incurred, consisting of lawyers' fees, engineers' reports, and costs in securing data, surveys, stakes, monuments, maps, tents, trucks, camp outfits, surveyors' instruments, and other tangible personal property, in the attempt to annex the additional territory to the Yocona district. After the decision in the McLemore case, the Yocona district attempted to enforce payment of these expenses by a proceeding under chapter 159, Laws of 1912 (Hemingway's 1927 Code, section 4958); but this court, in the case of *Yocona District* v. *Love,* 136 Miss. 760, 101 So. 684, held that the

proceedings by which additional territory was sought
to be included in the Yocona district were void; that the
chancery court in that proceeding had acquired no juris-
diction over the lands sought to be included in the Yo-
cona district, and that, therefore, the decree of the court
assessing these lands with the expenses incurred in the
effort to incorporate them into the Yocona district was
void. Prior to the decision of the Love case, the Talla-
hatchie district was organized under chapter 195, Laws
of 1912, and amendments thereto (Hemingway's 1927
Code, sections 4946 to 5003, inclusive), consisting ex-
clusively, of lands sought to be included in the Yocona
district. There was also organized the Panola-Quitman
drainage district (which we shall call, for convenience,
"Panola district"), embracing exclusively land sought
to be added to the Yocona district. While the Love
case was pending, the contract upon which this suit was
based was entered into between the Tallahatchie, Yocona,
and Panola districts. The Yocona district undertook to
sell to the Tallahatchie district and the Panola district all
the engineers' reports, surveys, stakes, monuments,
tents, trucks, camp outfits, surveyors' instruments, and
other personal property, which the Yacona district had
acquired in its effort to incorporate within its bound-
aries the additional territory out of which the Talla-
hatchie and Panola districts were afterwards formed.
The purchase price stipulated in the contract was two
hundred thousand dollars, of which the Tallahatchie dis-
trict was to pay one hundred thirty thousand dollars,
and the Panola district the balance, seventy thousand
dollars. The contract provided that, if the Yocona dis-
trict failed in its proceeding under chapter 159, Laws of
1918 (Hemingway's 1927 Code, section 4958), to have
the Tallahatchie and Panola districts taxed for the pur-
pose of paying the expenses of the abortive attempt to
extend the boundaries of the Yocona district, the latter
districts would pay the Yocona district two hundred
thousand dollars. The Tallahatchie district to pay one

148 Miss.—13.

hundred thirty thousand dollars, and the Panola district the balance. This court having held in the Love case that the Yocona district, under the law, could not be reimbursed in this manner for such expenditures, the Yocona district brought this action to recover of the Tallahatchie district its agreed proportion of one hundred thirty thousand dollars. The Tallahatchie district defended the action on three grounds: (1) That the Yocona district had no title or interest in the property it attempted to sell, and therefore could pass none to the Tallahatchie district; (2) that the Tallahatchie district had no power, under the law, to make the contract sued on; and (3) that the contract was void, because the meeting of the drainage commissioners of the three districts at which the contract was authoried was held outside this state, and no meeting was afterwards held in the state to ratify and approve the contract.

We think it would be well to consider, first, the powers of drainage commissioners under chapter 195, Laws of 1912 (Hemingway's 1927 Code, sections 4046 to 5053, inclusive), for it will be observed at once that the extent of their powers has a very material bearing on the question whether the Tallahatchie district, under the law, was authorized to purchase the property sold to it by the Yocona district; and, furthermore, such a consideration may throw some light on the question as to whether the latter district had such title or interest in the property as to authorize its sale and transfer to the former district.

It is contended, on behalf of the Tallahatchie district, that, under the governing drainage laws, the drainage commissioners have no powers except those expressly given, that the exercise of any powers not so given is *ultra vires,* and not binding on the district, and that position is sought to be maintained by the decisions of this court with reference to acts of boards of supervisors in the exercise of their jurisdiction over county affairs.

It is true that it is the established doctrine of this state, as held in *Amite County* v. *Mills*, 138 Miss. 322, 102 So. 465, 737; *Smith* v. *Mangum*, 127 Miss. 192, 89 So. 912, and several other decisions of this court, and boards of supervisors have no implied powers, that all their acts must be expressly authorized by law, and, furthermore, that they can only act through their minutes spread upon the records of their office.

We do not think that is true of drainage commissioners under this statute. The statute itself expressly provides "that this act shall be liberally construed to promote ditching, drainage and the reclamation of wet, swampy and overflowed lands." Section 33, chapter 269, Laws of 1914; Hemingway's 1927 Code, section 4999. Furthermore, we think the case of *Jones Bayou Drainage District* v. *Sillers, Clark & Sillers*, 129 Miss. 13, 91 So. 693, is decisive of this question, by analogy. Therein the court held, in construing the statute here involved, that drainage commissioners have a wider discretion in the exercise of the powers conferred on them by law than boards of supervisors. The facts in that case, in brief, were as follows: The landowners, proposing the drainage district, held a meeting wherein it was decided to create the district, that three named persons should act as temporary drainage commissioners, and that certain named attorneys be selected as attorneys for the district. Thereafter the district was created as planned at this meeting. The attorneys selected at the meeting were accepted by the commissioners, and served the district; they prepared all necessary papers, and performed other services required in creating the district. There was no express contract between the drainage commissioners and the attorneys for the services of the latter, and no minutes were kept by the drainage commissioners showing their employment. The court held, under the facts stated, that an implied contract arose on the part of the district to pay the attorneys a reasonable compensation for their services.

It is true that a drainage district, under the statute in question, is a political subdivision of the state. It is created for the purpose of draining and reclaiming wet and overflowed lands, as well as to preserve the public health and convenience. For the accomplishment of those purposes, it is vested with the necessary governmental powers. *Standard Oil Co.* v. *National Surety Co.*, 143 Miss. 841, 107 So. 559. But the governmental powers exercised by a drainage district under the statute, as compared with those exercised by boards of supervisors, are small. It is provided in section 4 of the act (chapter 159, Laws of 1918; Hemingway's 1927 Code, section 4952), that such a district shall constitute "a body politic by a name and style selected," and in the same section of the act, which is embodied in Hemingway's 1927 Code, section 4953, it is provided that the commissioners shall adopt a common seal for the district, and, *"they may do all acts and things not inconsistent with this act, and with the laws of this state, that may be proper to effect the purpose and object of this act."* (Italics ours.) Under the statute, a drainage district is predominantly a business corporation engaged in the reclamation of swamp and overflowed lands for agricultural purposes. That is the outstanding purpose of the statute. The duties of drainage commissioners are more largely administrative than governmental; they have no authority to pass ordinances for the government of the district; their main duties are to administer the business affairs of the corporation. Nor are they required by the statute to keep minutes of their proceedings. On the other hand, boards of supervisors are invested by the law with large governmental powers. They not only administer the financial affairs of their counties, but have *quasi*-legislative powers. They are authorized by law to pass ordinances with reference to certain matters. The issuance of bonds for various county and county district purposes, which boards of supervisors are authorized by law to

·do, is legislative in its character rather than executive or judicial, although it involves, to the same extent, the exercise of all three of those powers; and that is true of· the exercise by boards of supervisors of powers conferred on them by law to organize road districts, and issue the bonds thereof, for road purposes.

In view of what we have said with reference to the nature and purpose of the organization of drainage districts, we will consider: First, the question whether or not the Yocona district had such interest or title in the property involved as to authorize it to sell and transfer it to the Tallahatchie district. It is beyond question that, under the decisions in the *McLemore* and *Love cases, supra,* the act of the Yocona district in acquiring the property sold by it to the Tallahatchie district was *ultra vires* and void; but, does it follow therefrom, as a logical result, that the Yocona district could not, under the law, sell and transfer the property to the Tallahatchie district? We think not. The Yocona district had possession of the property, and had a better title to it than any one else. Under the law, the engineer who made the surveys and records, and did the other necessary work which constituted part of the property sold, could not, in a suit for that purpose, recover such property from the Yocona district, and that is true of the persons who sold and delivered to the Yocona district the tangible, personal property which constituted part of the property sold by the latter to the Tallahatchie district. Here we have a corporation selling personal property to another, which property, under the law, it had no right to acquire and own. Its action in acquiring the property was *ultra vires* and void. The purchaser takes the property and agrees to pay for it. He is sued for the purchase price, and defends on the ground that the seller had no right to acquire and own the property, but, at the same time, retains possession and use of the property. The Yocona district had no use for the property it sold to the Tallahatchie district.

Should it have given it away or destroyed it? We think not. We are of the opinion that the Yocona district had such an interest and title in and to the property it sold to the Tallahatchie district as authorized it to make the sale and transfer possession thereof. This view is supported by the cases of *Middleton* v. *Georgetown Mercantile Co.,* 117 Miss. 134, 77 So. 956; *Wall* v. *Darby,* 132 Miss. 94, 95 So. 791; *Watts Mercantile Co.* v. *Buchanan,* 92 Miss. 540, 46 So. 66; *Kerfoot* v. *Bank,* 218 U. S. 281, 31 S. Ct. 14, 54 L. Ed. 1042; 19 R. C. L. p. 1062, section 35.

As to the question whether or not the Tallahatchie district had the right, under the law, to purchase and pay for property, we think there is little additional to be said. Chapter 159, Laws of 1918 (Hemingway's 1927 Code, section 4955), provides, among other things, that the drainage "commissioners shall prepare plans for the improvement within the district, as prayed for in the petition, and shall procure estimates from a competent engineer, or engineers as to the cost thereof; and, for that purpose, the board of commissioners may employ such engineers and other agents as may be needful, such engineer [or engineers] to give bond, in the sum of at least, one thousand dollars," etc., ". . . and may purchase such material and supplies, and pay for such publications and printing necessary or incidental in the prosecution of the work; and said board of commissioners shall provide for reasonable compensation to the engineer or engineers, attorneys and other agents, and for the cost of such material and supplies and publications and printing, and the same shall be taken as a part of the costs of the improvements." Upon its organization, the commissioners of the Tallahatchie district found it unnecessary to employ an engineer to make a survey of the district and plans and specifications for the work to be done, and also found it unnecessary to purchase new tents, trucks, camp outfits, surveyors' instruments, stakes and other personal prop-

erty required to carry out the plans of the district. They found all this information and property in the possession of the Yocona district, and they decided it would answer their purpose as well, or better, than to have the work done all over again and purchase anew the required stakes, tents, trucks, camp outfits, etc. The statute expressly authorizes the commissioners to prepare plans for the improvement of the district, and, if necessary, to employ an engineer or engineers for that purpose. We think the statute is broad enough to authorize the commissioners to adopt and purchase the plans and specifications made either before or after the organization of the district, if, in their judgment, such surveys, plans and specifications meet the requirements of the district. And certainly there is nothing in the statute which prohibits the commissioners from purchasing secondhand material and supplies for the improvement of the district. The statute provides that if an engineer is employed he shall give bond to the commissioners for the faithful performance of his duties. This provision is stressed in the argument as meaning that the commissioners are without authority to purchase and adopt the plans and specifications of an engineer who is not under bond. We do not think that position sound. An engineer for a drainage district who has faithfully and efficiently performed the duties required of him would be entitled, to the agreed compensation for his services, notwithstanding his failure to give bond as required by the statute.

The question whether the contract sued on is void because it was authorized by a meeting of the commissioners of the three drainage districts held outside the state, and outside their districts, was raised by the Tallahatchie district in two pleas, which were held to be insufficient in law. These pleas, in substance, set up that the contract was void because this meeting was held outside the state and outside the Tallahatchie district, and no minutes were made of the meeting, and no meet-

ing was held within the state to ratify and approve the contract sued on. Under the rule that a plea is to be taken most strongly against the pleader, it will be presumed that the contract was executed within the state and within the drainage districts, parties to the contract. Putting it differently, it will be presumed that the commissioners of the Yocona district executed the contract within the borders of that district, and likewise the commissioners of the Tallahatchie and Panola districts executed the contract within the borders of their respective districts. We think this meets the requirements of the law. The statute, as we have stated, does not require the drainage commissioners to keep minutes of such contracts. All of the commissioners of each district signed the contract. Under the authority of *Jones Bayou Drainage District* v. *Sillers, Clark & Sillers, supra,* that was sufficient to bind all parties to the contract.

The view we have taken of this case renders it unnessessary to decide whether or not chapter 159, Laws of 1918 (Hemingway's 1927 Code, section 4958), was intended only to provide against double taxation of a drainage district.

We find no merit in the other questions argued on behalf of the Tallahatchie district, and we do not think they are of sufficient seriousness to call for discussion by the court.

*Affirmed.*