## In re BRIDGE BONDS, RATLIFF TP., JOHNSTON COUNTY.

No. 4188.   Opinion Filed December 3, 1912.

(128 Pac. 681.)

1.    **TOWNSHIPS—Bonds—Validity.**   Section 1, c. 99 (Sess. Laws, 1910-11, p. 211), does not authorize a township through which a stream flows to issue bonds to bridge said stream at some point within the township, although such stream forms part of the boundary of the county in which such township lies.

2.    **SAME.**   Said statute authorizes the township to issue bonds for the construction of the bridge across a river or stream only when such river or stream forms the boundary of said township, and also the boundary of the county in which said township lies, and the bridge is to be constructed across the stream where it constitutes the common boundary of the township and county.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*W. R. Taylor, Judge.*

In the matter of the bridge bonds of Ratliff Township, Johnston County. From a judgment holding the bonds invalid, the township brings error. Affirmed.

*Cruce & Potter,* for plaintiff in error.

*Chas. West,* Atty. Gen., for defendant in error.

HAYES, J. The judgment from which this appeal is prosecuted was rendered by the trial court upon an agreed statement of facts. The Washita river runs through Ratliff township, which is located in the western portion of Johnston county, in this state. Said river constitutes a portion of the boundary line between Johnston and Marshall counties, but does not form any portion of the boundary line of Ratliff township. The township officers have proceeded, under the provisions of chapter 99 of Sess. Laws 1910-11, to issue bonds for the construction of a bridge across said river in that township, and have submitted the bonds to the Attorney General as *ex-officio* bond commissioner of the state for his approval, which he refuses to do; and thereupon this agreed controversy was submitted to the trial court for a determination of the bond commissioner's duty in the premises.

The sole question presented is the construction of section 1 of said statute, which, in so far as it is material to this controversy, reads as follows:

"That the township board of any township of any county in the state of Oklahoma bordering on or lying adjacent to any river or stream which may be the boundary line between two counties, is hereby authorized and empowered to issue the bonds of such township for the purpose of building or assisting in the building, constructing, or assisting in constructing a bridge across such river or stream. * * * *"

Subsequent sections of the statute prescribe in detail the procedure to be pursued in the issuing of such bonds, which can be done only after an election held at which the proposition must receive at least three-fifths of the votes of the electors voting thereon in order to authorize the issuance of such bonds. The

contention of the municipal authorities is that the foregoing quoted provision of the statute authorizes the township board of any township through which a river runs that constitutes a boundary line between any two counties to issue bonds for the purpose of constructing a bridge over such river within such township. In other words, the test of the authority of a township board to construct a bridge over any river traversing the township is: Does such river form a boundary line between any two counties? The language of the statute is involved and its meaning ambiguous, and by a close analytical construction of the language used some justification may be found for the construction contended for by the municipal authorities; but this statute, we think, should be construed in connection with the already existing statutes on the subject of construction of bridges by township authorities. The act of which this statute forms a part, which was approved March 16, 1911, does not undertake to specifically repeal any existing statute, and should therefore be construed as supplementary legislation to the existing statutes upon the subject, except in so far as its provisions are clearly in conflict with the former statutes. Sections 7883 and 7884, Comp. Laws 1909, authorize the board of trustees of any township, with the approval of the board of county commissioners, to construct bridges across streams that run through any township. Section 7885 provides for the construction of bridges by townships on streams that constitute a boundary line between two townships in the same county. Section 7886 provides for the construction of bridges by two or more adjoining counties over any stream forming a boundary line between such counties or flowing from one county into the other; but, prior to the passage of the statute here involved, no authority existed in a township to construct or assist in constructing a bridge over a stream that constituted the boundary of townships in different counties and the common boundary of two counties. It can be easily understood how such authority in townships might become important in cases where two townships in different counties with a common boundary stream between find it, on account of the commercial relations of such townships, very necessary to the inhabitants of such town-

ships that the stream between the townships be bridged. Without the provisions of the act under consideration, such bridge could be constructed only by the counties; but this act unquestionably authorizes such adjoining townships in different counties to join in the construction of the bridge across the boundary stream and empowers either township to construct same alone, and this, in our opinion, was all the authority intended by the legislators to be granted by the act. It is to be observed that the purpose for which the bonds may be issued is either to build or "assist in building," to construct, or "assist in constructing" a bridge across such river or stream. If the broad construction the township board contends for is to be given to this act, then any township may not only construct at some point within the township a bridge across any stream that flows through such township, if the stream forms the boundary between any two counties, but it may construct or assist in constructing a bridge at any point on said stream in the county, or out of the county of which the township forms a part; and, if the language be literally construed, it would not be necessary that the stream form a boundary of the county in which such township lies, but would be sufficient if it formed the common boundary of any two counties within the state. We think no such broad construction or meaning was intended by the Legislature. No reason upon which such legislation can be based can be conceived of. Much emphasis has been placed by counsel for the township upon the word "adjacent," as used in the statute, and they insist that by the use of this word it was intended to provide that it was unnecessary that the township border on or touch the river or stream which is to be bridged, and if such township lies reasonably near to the stream, so that its convenience will be served in bridging the stream, that it may participate in bridging the stream or bridge it at its own expense. As said by the court in *Wormley et al. v. Board of Supervisors,* 108 Iowa, 232, 78 N. W. 824:

"We realize that the word 'adjacent' does not at all times mean adjoining or abutting; but it is many times so used, and the purpose of its use is to be known from the context. Synonyms of the word are 'abutting,' 'adjoining,' 'attached,' 'beside,' 'bordering,' 'close,' 'contiguous,' 'neighboring,' 'next,' and 'nigh.'"

In all statutes authorizing the issuance of bonds it is highly important that the authority of the municipality to issue same be definitely and clearly defined. If the use of the word "adjacent" in this statute be held to have the effect to authorize any township that is near such a stream, though not bounded by the stream, to issue bonds, the question will always arise in every case, how near such township must be, and at what distance from the stream the authority will cease to exist in the township. The result of such a statute would be that the authority of no township that was not bounded by the stream could be definitely known to the purchaser or vendors of the bonds until its power was determined by the courts. We do not think it was intended that this grant of authority should be made with such indefiniteness as to result in such uncertainty in the validity of all bonds that might be attempted to be issued under the statute; but that it was intended only to grant authority to a township bordering on a stream that forms the boundary of the county in which such. township is located to construct across such stream a bridge leading from one county to the other, either at its own expense or assisted by the other townships bordering on said stream, and for such purpose it may issue bonds under the procedure prescribed by the statute.

The judgment of the trial court is accordingly affirmed.

TURNER, C. J., and WILLIAMS, J., concur; KANE and DUNN, JJ., absent, and not participating.