2004 OK 60

In re DE–ANNEXATION OF CERTAIN REAL PROPERTY FROM THE CITY OF SEMINOLE, A Municipal Corporation,

Kinslow Round–Up Inc., an Oklahoma Corporation; Jack C. and Bonnie M. Humphreys Trust No. 1; 8:32, Inc., a Non-profit Corporation; D. Kircher Investments, L.L.C.; The CFS Insurance and Securities Money Purchase Plan and Trust; Gary and Linda Bloomer, HWJT's; Modern Oil Co., Inc.; Bobby J. Williams and Mary E. Williams Living Trust; Joe K. and Alyce Ellis, HWJT's; Billy G. Clark; Hazel Reynolds; Jim and Robin Norris (Landlord) Julia Bellini and Leslie Hinds (Tenants); Eugene and Francis Warrensberg; and Sue Jarvis, Petitioners/Plaintiffs/Appellants,

v.

The City of Seminole, a Municipal Corporation, Respondent/Defendant/Appellee,

and

State of Oklahoma, ex rel., Oklahoma Tax Commission, Additional Defendant.

No. 98,038.

Supreme Court of Oklahoma.

July 6, 2004.

Rehearing Denied Nov. 15, 2004.

Michael J. Novotny, Hartzog, Conger, Cason & Neville, Oklahoma City, OK, for Appellants.

Ed Cadenhead, Elsener & Cadenhead, Seminole, OK, and Reggie N. Whitten, Jason E. Roselius, Philip W. Anderson, Whitten, McGuire, Wood, Terry, Roselius & Dittrich, Oklahoma City, OK, for Appellee.

Harlan Hentges, Mulinix, Ogden, Hall, Andrews & Ludlam, Oklahoma City, OK, for Amicus Curiae—Oklahoma Agricultural Legal Foundation.[1]

OPALA, V.C.J.

¶1 The dispositive issue tendered on certiorari is whether summary relief for the City was erroneously entered. We answer in the affirmative.

## I

### THE ANATOMY OF LITIGATION

#### *Ordinance 917*

¶2 On 6 December 1999 the City of Seminole (City) enacted Ordinance No. 917, whose terms annexed certain territory to its corporate limits. The territory consisted of several tracts of land along Highway 99 which were connected by a 3-foot-wide strip of land that *touched* the northern boundary of the city, *extending* perpendicularly several (7 to 10) miles (along the west side of the highway) to the I-40 intersection. The protestants (non-consenting landowners and commercial tenants) challenged the ordinance by petitioning the City for de-annexation of the land. Upon denial of their quest they *appealed* to the district court, *brought* an action for a judicial declaration of the ordinance's invalidity, and *sought* an order to restrain the City from proceeding with the annexation. Both parties moved for summary judgment. Protestants argued *inter alia* that the December 6 meeting was held in violation of the Open Meeting Act.[2] Agreeing with the protestants on that issue, the trial court set a hearing date to determine whether the Act's violation was willful. Before disposition of the willfulness issue, the City enacted on 7 August 2001 Ordinance 941, whose terms *vacated* Ordinance 917, *de-annexed* the property included in that ordinance and *re-annexed* the protestants' property as well as the property of consenting landowners.

#### *Ordinance 941*

¶3 After adoption of Ordinance 941, the parties amended their district court pleadings and motions for summary judgment. The protestants *incorporated* their earlier arguments directed at Ordinance 917, *challenged* the validity of Ordinance 941 as well as *brought* a third-party claim against the Oklahoma Tax Commission [OTC] for a judicial declaration of their entitlement to all municipal sales taxes paid under protest as well as to taxes illegally collected by the City or by the OTC on the City's behalf.

¶4 The trial court *gave summary relief* to the City on the claim addressing solely Ordinance 941,[3] leaving unresolved the controversy over Ordinance 917, and *certified*

---

1. Identified herein are only those counsel for the parties whose names appear on briefs or other materials submitted on certiorari.

2. 25 O.S.2001 § 304 *et seq.*

3. The trial court ruled there was neither a genuine issue of material fact about Ordinance 941 nor support in the record for protestants' view that (a) the City acted outside its authority to annex the territory covered by Ordinance 941 and (b) the annexation was unreasonable.

the order (as if it were a judgment)[4] for immediate appeal in advance of judgment upon all the claims pressed in the action in accordance with the provisions of 12 O.S.2001 § 994(A).[5] Protestants brought an appeal upon the certified order, which they prosecuted by the accelerated-track method (designed for review of summary judgments).[6] The Court of Civil Appeals [COCA] affirmed.

## II

### CERTIORARI ARGUMENTS

¶ 5 Protestants advance three principal theories for declaring Ordinance 941 invalid. Firstly, they claim the statutory municipal annexation scheme entitles owners of property to be annexed to notice and an opportunity either to consent to the proposal or to negotiate a plan for municipal services. Secondly, they argue that the statutory contiguity requirement is not met by the annexation of several discontiguous commercial tracts located at three intersections on a ten-mile stretch of highway, which are tied together by a 3–foot–wide "shoestring strip" of land whose inclusion was doubtless for the sole purpose of meeting the technical contiguity requirement. Thirdly, they argue that nei-

ther the trial court nor COCA applied any standard of reasonableness either to the annexation process or to its result.[7]

¶ 6 City argues that judicial review of a municipal annexation is limited to determining whether the governing body acted within the scope of its legislative authority and its action is reasonable. Because the ordinance was passed in accordance with the statutory requirements—inasmuch as the necessary consents had been obtained and the annexed territory is contiguous to the city limits— City urges the only remaining question for the courts is whether its actions were reasonable. According to City, the reasonableness standard requires a two-step analysis—ascertaining whether the goal and intent of annexation is reasonable under the circumstances and if so, whether the ordinance is a reasonable means to accomplish the goal. City claims that Ordinance 941 meets the reasonableness test because (a) its goals were (a) to establish control over the Highway 99 corridor extending to the I–40 intersection, (b) to increase its tax base through generation of sales tax revenue from the business district located along Highway 99 and (c) to encourage the City's growth to-

---

**4.** A **true Oklahoma judgment** is one that determines **all the issues and claims** in the entire action. *Reeves v. Agee,* 1989 OK 25, ¶ 28, 769 P.2d 745, 757, 758 n. 50; *Eason Oil Co. v. Howard Engineering,* 1988 OK 57, ¶ 4, 755 P.2d 669, 671; *Reams v. Tulsa Cable Television, Inc.,* 1979 OK 171, ¶ 3, 604 P.2d 373, 374.

**5.** In a multi-party/multi-claim cases, when at least one complete claim has been decided, but others stand unresolved, the *trial court may advance the decided claim(s) for immediate review.* 12 O.S.2001 § 994. The pertinent provisions of § 994(A) are:

 A. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment, decree, or final order as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of a final judgment, decree, or final order. . . .

 *See* in this connection *May–Li Barki, M.D., Inc. v. Liberty Bank and Trust Co.,* 1999 OK 87, ¶¶ 3–4, 20 P.3d 135, 142–43 (Supplemental Opinion on Rehearing); *Nestle Food Company v. Crews,* 2000

OK 58, ¶ 2, n. 2, ¶ 6, n. 12, 11 P.3d 205, 207, 208; *LCR, Inc. v. Linwood Properties,* 1996 OK 73, ¶ 12, 918 P.2d 1388, 1393–94.

**6.** For the accelerated-track regime that regulates procedure for appeals from dismissals and summary judgments, see Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1.

**7.** Protestants advanced other arguments by which they tender issues addressing Ordinance 917. They argue the court should determine that the adoption of Ordinance 917 was willful as a matter of law, thus rendering it null and void. According to Protestants, because Ordinance 941 is directly dependent upon Ordinance 917 and since it was enacted at the same meeting at which Ordinance 917 was vacated, Ordinance 941 should also be declared null and void. Lastly, protestants urge the City must disgorge its illegally obtained revenues. This is so because they have met the burden of establishing that the annexation did not fulfill the statutory requirements, and thus the jurisdictional facts (*i.e.,* the prerequisites for the exercise of annexation power) have not been satisfied. **We hold that all issues relating to Ordinance 917 lie outside the purview of those that stand certified for appellate review.**

wards the I–40 intersection. City contends that a corridor-style annexation constitutes a reasonable method for expanding municipal boundaries.

## III

### THE STANDARD OF REVIEW FOR APPEALABLE PRODUCTS OF SUMMARY PROCESS

 ¶ 7 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes [8]—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process.[9] Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense.[10] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for nisi prius resort to summary process for a claim's adjudication.[11]

 ¶ 8 Summary relief issues stand before us for de novo review.[12] All facts and inferences must be viewed in the light most favorable to the non-movant.[13] Just as nisi prius courts are called upon to do, so also appellate tribunals bear an affirmative duty to test for its legal sufficiency all evidentiary material received in summary process to support the relief sought by the movant.[14] Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor.

¶ 9 The material facts in this case are not disputed. The dispositive issue on certiorari presents a pure question of applying the statute-prescribed standards to the undisputed facts.

## IV

### THE LAW GOVERNING MUNICIPAL ANNEXATIONS

#### A.

*An Alteration of Municipal Boundaries Is Accomplished By The Exercise Of A State Sovereign Power That Has Been Delegated to Municipalities*

 ¶ 10 There is only one sovereign power in state government.[15] The exercise

---

**8.** " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Memorial Hosp.*, 1995 OK 112, ¶ 15, n. 35, 909 P.2d 765, 773, n. 35. *See also Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 927.

**9.** The focus in summary process is not on the facts which might be proven at trial, but rather on whether the evidentiary material in the record tendered for elimination of trial reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n*, 1998 OK 113, ¶ 7, 980 P.2d 109, 112; *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, ¶ 8, n. 15, 777 P.2d 932, 936, n. 15.

**10.** To that end, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary materials which are offered in acceptable form without objection from other parties or are admitted over the challenging exception. *Polymer, supra* note 9, at ¶ 8,

at 113; *Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81.

**11.** *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶ 7, 952 P.2d 492, 497. *See also Gray v. Holman*, 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

**12.** An order that grants summary relief, in whole or in part, disposes solely of law questions. It is reviewable by a de novo standard. *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321. *See also Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084 ("Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings.").

**13.** *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

**14.** *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

**15.** *Fine Airport Parking, Inc. v. City of Tulsa*, 2003 OK 27, ¶ 18, 71 P.3d 5, 11; *City of Pryor*

of that power in Oklahoma is through the State Legislature.[16] Municipalities [17] are political subdivisions of the State.[18] Their governmental activities—executive, legislative and judicial—must conform to both the mandates of the State's constitution and to the general laws upon matters of statewide interest.[19]

¶ 11 The power to alter local governmental boundaries falls solely within the State's plenary authority. The State Legislature has conferred the annexation power upon municipalities to be exercised in conformity to the Oklahoma Municipal Code.[20]

Creek v. Public Service Co. of Oklahoma, 1975 OK 81, ¶¶ 15–16, 536 P.2d 343, 346–47. See Waller v. Florida, 397 U.S. 387, 394, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) (the state's political subdivisions are regarded as subordinate governmental instrumentalities of the state, not separate sovereign entities). In Waller, the Court held that trying a defendant on state charges after a conviction for violation of municipal ordinance for same act is barred by double jeopardy. City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 412, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978) (the Court refused to afford the city the same deference it gave to the states, explaining that cities are not sovereign and hence not free to pursue their parochial interests via anti-competitive conduct). The Court has long recognized that states have broad authority over the establishment and development of municipalities within their borders. In Hunter v. Pittsburgh, 207 U.S. 161, 177–180, 28 S.Ct. 40, 46–47, 52 L.Ed. 151 (1907), the Court observes that local governments are "political subdivisions of the state;" the extent of their powers "rests in the absolute discretion of the state;" and as for the powers exercisable by the local government, "the state is supreme." See Charles S. Rhyne, THE LAW OF LOCAL GOVERNMENT OPERATIONS, § 1.3 at 2 (1980) (a municipality is generally regarded as a subordinate branch of state government); 1 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 1.38 (3d.ed.).

16. City of Sapulpa v. Land, 1924 OK 92, ¶¶ 40–42, 223 P. 640, 645–46, 101 Okl. 22.

17. The term "municipality" is defined in the Municipal Code as "any incorporated city or town." 11 O.S.2001 § 1–102(5).

18. See supra note 15.

19. The pertinent terms of 11 O.S.2001 § 14–101 provide:

The **municipal governing body may enact ordinances,** rules and regulations **not inconsistent with the Constitution and laws of Oklahoma**

## B.

### *The Governing Statutory Annexation Scheme*

¶ 12 A municipality is authorized to annex territory that is **adjacent** or **contiguous** to its corporate limits as the governing body deems desirable for the benefit of the municipality. 11 O.S.2001 § 21–101.[21] Property may be considered to be adjacent or contiguous if it is separated from the corporate limits by a railway, highway right-of-way or an intervening strip less than four rods wide.

for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal functions. . . .
(emphasis added).
The state constitution and general laws upon subjects of statewide concern control over conflicting city charter provisions. Fine Airport Parking, supra note 15, at ¶ 25, at 13; City of Pryor Creek, supra note 15, at ¶¶ 15–16, at 346–47. A city charter must give way to matters of statewide interest. Fraternal Order of Police Lodge No. 165 v. City of Choctaw, 1996 OK 78, ¶ 15, 933 P.2d 261, 266; Simpson v. Dixon, 1993 OK 71, ¶ 21, 853 P.2d 176, 186 (a city's charter provisions supersede state law only when they affect a subject that is **deemed to lie exclusively within municipal (or local) concern;** all conflicting charter provisions must yield to the state constitution and to the general laws which govern subjects constituting state functions); City of Tulsa v. Public Employees Relations Bd., 1990 OK 114, ¶¶ 8–11, 845 P.2d 872, 874–75; Oliver v. City of Tulsa, 1982 OK 121, ¶ 7, 654 P.2d 607, 609; City of Tulsa v. Dabney, 1928 OK 593, ¶¶ 0, 7–8, 270 P. 1112, 1113, 133 Okl. 54. Because the expansion of a municipality's territorial limits is deemed a matter of statewide interest, the provisions of a city charter must yield to the State Legislature's general annexation laws. Matter of Referendum Petition Filed with City Clerk of Norman on January 31, 1980, 1980 OK 61, ¶ 9, 610 P.2d 243, 245. See also 6 MCQUILLIN, supra note 15, §§ 4.80, 21.30, 21.32, 21.34, citing authority from numerous jurisdictions.

20. See 11 O.S.2001 § 21–101 et seq. of the Oklahoma Municipal Code.

21. The terms of 11 O.S.2001 § 21–101 provide:

The municipal governing body **by ordinance** may add to the municipality territory **adjacent or contiguous to its corporate limits** and increase or diminish the corporate limits as the governing body deems desirable for the benefit of the municipality.
(emphasis supplied).

11 O.S.2001 § 21–102.[22] The city is required to obtain the written consent of the owners of at least a majority of the acres to be annexed, except in two instances. 11 O.S.2001 § 21–103(A).[23] Neither of the two exceptions is applicable here.

## C.

### *Judicial Review of A Municipality's Annexation Decision*

¶ 13 The extension of municipal boundaries by ordinance is a legislative act of the city's governing body.[24] The primary judicial function in reviewing municipal annexations is to determine **whether the city has exercised its annexation power in a** reasonable **manner and in compliance with the standards of state law.**[25]

¶ 14 Extant caselaw has frequently described the municipal annexation process as a **"political"** decision.[26] We reclarify today this oft-repeated adjective in an effort to illuminate its correct meaning in the context of municipal annexations. The term **"political,"** [27] when used in its classical sense, refers to **governing.**[28] Political activity relating to governing is reviewable solely by political means. This is so because the U.S. Constitution assigns responsibility for political activity to the political branches of government—to the legislative or executive department. **The answer to a political question is impervious to judicial re-examination.**[29] In sum, for governmental action

---

22. The terms of 11 O.S.2001 § 21–102 provide:
Where any territory to be annexed is separated from the corporate limits of the municipality only by a railway right-of-way, or an intervening strip less than four (4) rods wide, or a highway right-of-way, the territory shall be considered adjacent or contiguous to the municipality.

23. The terms of 11 O.S.2001 § 21–103(A) provide:
A. Before the governing body of a city may annex any territory **adjacent or contiguous** to the city, it must obtain the **written consent** of the **owners of at least a majority of the acres to be annexed** to the municipality; *except* that no such consent is needed where:
1. The territory to be annexed is subdivided into tracts or parcels of less than five (5) acres and contains more than one residence; or
2. Three sides of the territory to be annexed are adjacent or contiguous to the property already within the municipal limits.
(emphasis supplied).

24. *Matter of De–Annexation of Certain Property*, 1983 OK 44, ¶ 11, 662 P.2d 1375, 1377; *City of Bethany v. District Court*, 1948 OK 38, ¶ 17, 191 P.2d 187, 189, 200 Okl. 49.
A municipal annexation ordinance becomes effective law upon its **final passage** (11 O.S.2001 §§ 14–102, 14–103) **and** compliance with the statutory (or city charter) publication requirements (11 O.S.2001 § 14–106) or statutory filing requirements (11 O.S.2001 12–112). *Public Service Co. of Oklahoma v. Northeastern Oklahoma Electric Coop., Inc.*, 2002 OK 29, ¶¶ 7–11, 49 P.3d 80, 82–83.

25. Extant jurisprudence has long recognized that controversies over municipal annexations are justiciable. *See, e.g., City of Claremore v. Town of Verdigris*, 2001 OK 91, ¶ 16, 50 P.3d 208, 213 (the court's function in annexation matters is to insure that the city has acted within the scope of statutory authority and that its actions have been reasonable); *Matter of De–Annexation of Certain Real Property, supra* note 24, at ¶¶ 5, 11, at 1376, 1377.

26. *See, e.g., Sharp v. Oklahoma City*, 1937 OK 685, ¶ 19, 74 P.2d 383, 385.

27. The term **"political"** is defined as: (a) "relating to government ... or the conduct of governmental affairs" (WEBSTERS' THIRD NEW INTERNATIONAL DICTIONARY (1961) at p. 1755) and (b) "pertaining to, or incidental to, the exercise of the functions vested in those charged with the conduct of government" (BLACK'S LAW DICTIONARY 1042 (5th Ed.1979)).

28. Lawmaking is a classical form of political process. Advocacy for or against a proposed law is the purest form of **political speech.** *Brock v. Thompson*, 1997 OK 127, ¶ 12, 948 P.2d 279, 287. When a matter is declared political it carries First Amendment immunity because the subject is about governing. Freedom of speech in the broad sphere of governing is unlimited. Even the legislature is powerless to authorize judicial review of purely political decisions. *Id.* at ¶ 12, at 287.

29. *See, e.g., Luther v. Borden*, 48 U.S. (7 How.) 1, 41, 12 L.Ed. 581, 599 (1849); *Pacific States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (1912); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Whether a state has a republican form of government is a nonjudicial political question. The Guarantee Clause (Art. 4, § 4, cl.1, U.S. Const.) treats the issue of a state government's legitimacy as a political question entrusted solely to the judgment of Congress. *Id. See in this connection In re Initiative Petition No. 364*, 1996 OK 129,

to be political there must be (a) an **issue of "governing"** coupled with (b) a **mandatory and final resolution by nonjudicial means.**

¶ 15 For their annexation decision municipalities cannot claim to be impervious to judicial review on the ground that it is a political decision. Municipal annexations have been accorded judicial review from the very inception of statehood.[30] Judicial process tests the annexation ordinance's conformity to applicable state law. It is hence a paradox, if not indeed an oxymoron, to call a municipal annexation decision "political" and yet still subject the legal process governing that function to judicial review.

## V

### THE STATUTORY CONTIGUITY REQUIREMENT

■ ¶ 16 This controversy presents the dispositive first-impression issue of whether a city's annexation of **several noncontiguous tracts of** land located along a 7–to–10–mile–long highway corridor, which are connected to the city by a 3–foot–wide strip of land that touches the city limits at its northern boundary and extends perpendicularly alongside the highway, is a reasonable application of the statutory contiguity (or adjacency) standard.

## A.

### Extant Municipal Annexation Jurisprudence

¶ 17 In *Sharp v. Oklahoma City*,[31] the court affirmed the annexation of territory connected by a strip of land **177.5 feet wide** and some **1,662 feet long** on the rationale that the shape of annexed property is a "political decision" with which it would not interfere **absent express statutory limitations** relating to the shape of the property.[32] The court's pronouncement, which narrowly focuses on the shape and size of the annexed territory as a nonjusticiable political decision, did not address the question whether the annexation ordinance was in a **reasonable compliance with the statutory prerequisite for adjacency.**[33] Because in the context of a corridor annexation this issue has not been directly addressed,[34] *Sharp* and its progeny[35]

¶ 8, 930 P.2d 186, 199–200 (Opala, J., concurring). Although in *New York v. United States*, 505 U.S. 144, 185, 112 S.Ct. 2408, 2433, 120 L.Ed.2d 120 (1992), it is "suggested that perhaps not all claims under the Guarantee Clause present nonjusticiable questions," the Court has yet to identify any exempted political questions that present justiciable claims. *Id.* (citations omitted).

30. *See, e.g., In re Yeargain*, 1914 OK 477, 143 P. 844, 43 Okl. 593.

31. *Supra* note 26 at ¶ 19, at 385.

32. For its "political decision" analysis *Sharp* relied on a 1908 California case, *People ex rel. Peck v. City of Los Angeles*, 154 Cal. 220, 97 P. 311, 313 (1908). While the California court cites a 1905 decision, *People v. Town of Loyalton*, 147 Cal. 774, 82 P. 620 (1905), for the "political question" terminology, we note that the term "political" appears nowhere in the latter case.

33. The then-effective annexation statute, § 6130, O.S.1931, required that the annexed territory be "adjacent" to the city limits. The version in controversy here, 11 O.S.2001 §§ 21–101 and 21–103, *supra* notes 21 and 23, requires the annexed territory to be either **adjacent or contiguous** to the municipal boundaries.

34. This annexation method has been described by various names, *i.e.*, shoestring, corridor, strip, long lasso, horseshoe, noose, barbell, hourglass, flag pole, ball-and-chain or ribbon-and-balloon. It generally refers to an annexation where a municipality uses a narrow corridor to connect its territorial boundary to an outlying noncontiguous area. *See* cases cited in footnote 47 *infra*.

35. *See, e.g., Town of Luther v. State*, 1967 OK 59, 425 P.2d 986. There, **the issue of the property's shape was tendered,** not whether the area to be annexed was contiguous (or adjacent) within the meaning of the statute. The court observed without further explanation that the strip method of annexation had been approved by *Sharp, supra* note 26, as well as noted that a discussion of the "validity of the 'strip' method of annexation subsequent to the annexing of the 'strip' by emergency ordinance," could be found in *Botsford v. City of Norman*, 354 F.2d 491 (10th Cir.1965). In the last cited case, a federal court, **relying solely on** *Sharp*, held that a 67–foot–wide strip of land extending for 14 miles from the city limits was sufficient to meet the state statute's adjacency requirements. More recently in *City of Claremore v. Town of Verdigris*, 2001 OK 91, 50 P.3d 208, this court **construed the contiguity requirement in a factually distinguishable case where** landowners under a different annexation statute (11 O.S.1991 §§ 21–105, 21–114) **had petitioned for annexation** to Verdigris. The court held that

cannot be deemed a broad, unlimited juris-prudential approbation of that annexation method.

## B.

### Statutory Construction

¶ 18 The fundamental rule for construction of a statute or ordinance is to ascertain and give effect to the legislative intent.[36] That intent is to be ascertained from the text of the statute in light of its general purpose and object.[37] Statutory construction presents a question of law.[38] Only where the intent cannot be ascertained from a statute's text, as might occur when ambiguity or conflict (with other statutes) is shown to exist, may rules of statutory construction be employed.[39]

the 50–foot–wide strip connecting the corporate limits of Verdigris to the annexed territory (15 tracts of land which abutted and **formed one mass of land**) qualified to make the annexed property "contiguous to the other municipality" within the meaning of the statute. Viewing extant jurisprudence as "instructive," the court observed that *Luther* (citing *Botsford*) had approved the strip-method of annexation and that according to *Sharp*, the shape of annexed property is a political decision. The court opined that the **factors leading to its decision not to interfere with Verdigris' annexation** were even more compelling than those in *Luther* and *Botsford*. In the latter cases the **territory was annexed over the objection of its owners**, whereas in *Claremore* the owners of the area that Verdigris annexed **had unanimously petitioned that town to incorporate their property into the city limits.**

**36.** *George E. Failing Co. v. Watkins*, 2000 OK 76, ¶ 7, 14 P.3d 52, 56; *Patterson v. Beall*, 2000 OK 92, ¶ 18, 19 P.3d 839, 845; *Nealis v. Baird*, 1999 OK 98, ¶ 55, 996 P.2d 438, 460; *Jackson v. Mercy Health Center, Inc.*, 1993 OK 155, ¶ 11, 864 P.2d 839, 844; *TXO Production Corp., v. Okla. Corp. Comm'n*, 1992 OK 39, ¶ 7, 829 P.2d 964, 968–69. A long-standing rule of statutory construction followed in this jurisdiction is that the manifest intent of the legislature will prevail over the literal import of the words. *Nicholas v. Morgan*, 2002 OK 88, ¶ 16, 58 P.3d 775, 781; *Moser v. Liberty Mutual Insurance Co.*, 1986 OK 78, ¶ 6, 731 P.2d 406, 409; *Bell v. United Farm Agency, Inc.*, 1956 OK 73, ¶ 10, 296 P.2d 149, 151; *Parkhill Truck Co. v. Wilson*, 1942 OK 168, 125 P.2d 203, 190 Okl. 473; *Keck v. Oklahoma Tax Commission*, 1940 OK 352, ¶ 7, 108 P.2d 162, 164, 188 Okl. 257; 2A Norman J. Singer, Sutherland Statutory Construction § 45.12, at 54 (4th ed.1986).

**37.** See cases cited *supra* note 36.

¶ 19 We must hence examine the annexation statutes as a whole and give them that interpretation which would conform to the divinable legislative intent in view of the objects and purposes sought to be accomplished.

## C.

### The Contiguity Requirement

¶ 20 The necessity of **"contiguity"** or **"adjacency"** as an **essential** element of the annexation process is mandated by the Legislature. Although undefined in the enactments, these terms **are treated as synonymous**[40] and are to be used in their **primary** and **obvious** sense.[41] The meaning of these words is not inflexible and may be affected by the facts of each case.[42] While contiguity

**38.** *Blitz U.S.A., Inc. v. Oklahoma Tax Com'n*, 2003 OK 50, ¶ 14, 75 P.3d 883, 888; *Mangrum v. Fensco, Inc.*, 1999 OK 78, ¶ 4, 989 P.2d 461, 462; *Wilson v. Wilson*, 1999 OK 65, ¶ 3, 987 P.2d 1210, 1212; *Anderson v. Dep't. of Human Services*, 1995 OK CIV APP 136, ¶ 9, 916 P.2d 846, 848.

**39.** *Cox v. Dawson*, 1996 OK 11, ¶ 6, 911 P.2d 272, 276; *Cooper v. State ex rel. Dep't. of Public Safety*, 1996 OK 49, ¶ 10, 917 P.2d 466, 468; *TXO, supra* note 36, at ¶ 7, at 969.

**40.** *City of Ada v. Whitaker*, 1949 OK 266, syl. 1, ¶ 20, 212 P.2d 482, 484, 202 Okl. 249 (the term "adjacent" means abutting on and is synonymous with contiguous); *see also Rhyne, supra* note 15, at § 2.35, p. 30; 2 McQuillin, *supra* note 15, § 7.20; Erwin S. Barbre, *What Land Is Contiguous or Adjacent to Municipality So as to Be Subject to Annexation*, 49 A.L.R.3d 589 § 3(a).

**41.** *City of Ada, supra* note 40, at ¶¶ 0, 21, at 482, 484; *In re Bridge Bonds, Ratliff Tp., Johnston County*, 1912 OK 805, ¶ 3, 128 P. 681, 682–83, 35 Okl. 192.

**42.** *City of Ada, supra* note 40, at ¶ 21, at 484 (the term "adjacent" has no arbitrary definition; "its meaning depends largely upon the subject matter to which it is to be applied, and the object which the Legislature is seeking to carry out"). *See in this connection City of Irving v. Dallas County Flood Control Dist.*, 383 S.W.2d 571, 576 (Tex. 1964)(the meaning of the word adjacent is determinable principally by the context in which it is used, by the facts of each case, and by the subject matter to which it is applied); *Barbre, supra* note 40, 49 A.L.R.3d 589, § 3 (the author notes that the majority of cases within the annotation's scope support, at least by implication, the notion

generally **requires some touching** of the municipality and the territory to be annexed,[43] the law is unsettled on **whether the inclusion of a 3–foot–wide strip, whose only purpose is to provide a connecting link with the lands sought to be annexed, satisfies the statutory standard of contiguity.**

### D.

### *The Basic Concept of Municipality*

¶ 21 A meaningful insight into the legislative purpose for the contiguity requirement can be gleaned from an examination of the concept of a city as it relates to its territorial expansion. The basic idea of a municipality is that of a unified body of inhabitants having a community of interest and gathered together in a single mass, with recognized and well-defined external boundaries, not separate and disconnected areas.[44] **The annexation statute's contiguity requirement is an integral component of the municipality's essential concept.**[45]

¶ 22 For statutory contiguity to be met where a narrow corridor is used to gain access to discontiguous tracts of land, the corridor itself must have a tangible municipal value or purpose at the time of annexation.[46] The contiguity requirement is not satisfied by means of a **territorial appendage** that connects several remote tracts of land to the annexing municipality, but has little relationship to a beneficial municipal purpose. This method of annexation does not coincide with legislative intent. We note that courts are generally loath to find one

---

that the definitions of contiguity and adjacent are not inflexible and may themselves be affected by the facts of the case).

43. Contiguous is defined as being in physical contact, touching, near or adjoining. *Goodin v. Board of Ed. of Independent School Dist. No. 14 of McCurtain County*, 1979 OK 87, ¶ 7, 601 P.2d 88, 90; *City of Ada, supra* note 40, at ¶ 21, at 484.

44. In *City of Middletown v. McGee*, 39 Ohio St.3d 284, 530 N.E.2d 902, 905 (1988), the court observed that the concept of a municipality as a unified body has been expressed as follows:

"'* * * The legal as well as the popular idea of a town or city in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants-that is, a body of people collected or gathered together in one mass, not separated into distinct masses; and having a community of interest because [they are] residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not . . . . [separation] or segregation. * * * *'"
*McGee, supra*, quoting *Watson v. Doolittle*, 10 Ohio App.2d 143, 226 N.E.2d 771, 775 (1967). *See also, Owosso Tp. v. City of Owosso*, 385 Mich. 587, 189 N.W.2d 421, 422 (1971); *People, ex rel. South Barrington, v. Hoffman Estates*, 30 Ill.2d 385, 198 N.E.2d 97, 98 (1964); *Ridings v. City of Owensboro*, 383 S.W.2d 510, 511 (Ky.1964); *Town of Mt. Pleasant v. City of Racine*, 24 Wis.2d 41, 127 N.W.2d 757, 760 (1964); *Potvin v. Chubbuck*, 76 Idaho 453, 284 P.2d 414, 416 (1955); *Niobrara v. Tichy*, 158 Neb. 517, 63 N.W.2d 867, 872 (1954); *Clark v. Holt*, 218 Ark. 504, 237 S.W.2d 483, 484–485 (1951).

45. The contiguity concept contemplates that the proximity of the annexed territory to the annexing city will increase the likelihood that new residents will receive an acceptable level of municipal services in return for paying taxes to the annexing locality. *See in this connection, City of Ada, supra* note 40, at ¶¶ 21, 22, at 484–85, where the court quoted the pertinent text of *In re Sadler*, 142 Pa. 511, 21 A. 978 (1891):

"The word 'adjacent,' we think is used in its primary and obvious sense as adjoining or contiguous, for we cannot conceive that the Legislature would annex to a borough a section of land or village wholly severed by the intervening lands of a township, so as to establish two entirely separate villages in one municipality. . . ."
It is also said therein that the essential and distinctive purpose and object of establishing a borough, the location and grading of streets, laying sewers, etc., would be rendered impracticable, and in many cases impossible by reason of the intervening territory. It is, therefore, obvious that the Legislature did not intend to provide for the annexation of territory to a city with intervening territory, except where such intervening territory is a strip less than four rods in width.

46. *See in this connection Griffin v. City of Robards*, 990 S.W.2d 634, 640 (Ky.1999)(if a municipal value or purpose occurs in the corridor, contiguity may be warranted, but if only a barren corridor exists, there is no contiguity)(citing *Ridings, supra* note 44, at 511–12, where three tracts of land located 2,200 feet, 3,600 feet, and 10,000 feet from the city were connected to the city only by highways not "shown to be of any municipal value or to serve any municipal purpose"); *Amick v. Town of Stallings*, 95 N.C.App. 64, 382 S.E.2d 221, 225–26 (1989).

territory to be contiguous to another where the only link between the two is forged by a narrow corridor.[47]

## E.

### The Presumption of Validity

¶ 23 A reviewing court must indulge in the presumption of validity that attaches to a municipal ordinance.[48] The burden of proof and persuasion rests on the party challenging the ordinance's validity.[49] The protestants bear the burden of showing noncompliance with the annexation law or the unreasonable features of the annexation process.[50]

¶ 24 When a **strip of land** connecting the city limits to the area targeted for annexation **is as narrow as 3 feet in width,** the burden of production but not that of persuasion[51] shifts to the annexing municipality to show that the critical strip will confer a beneficial use beyond its advantage to provide merely a connective territorial link to otherwise remote noncontiguous tracts.

## F.

### The Annexation of Disconnected Tracts of Land By A Connecting Strip That Serves No Municipal Purpose Other Than To Establish Statutory Contiguity Constitutes An Impermissible Exercise of State–Delegated Annexation Power By A Municipality

¶ 25 The deposition testimony of three City councilmen and the assistant city manager

**47.** *See, e.g., Clark, supra* note 44 at 484–85; *State ex rel Dept. of Transportation v. City of Milford,* 576 A.2d 618, 620–21 (Del.Ch.1989); *Potvin, supra* note 44, at 417; *City of Charleston v. Witmer,* 304 Ill.App.3d 386, 237 Ill.Dec. 529, 709 N.E.2d 998, 1000 (1999); *Ridings, supra* note 44, at 511–12; *Griffin, supra* note 46 at 640; *Owosso Tp., supra* note 44 at 422; *State ex rel. Danielson v. Village of Mound,* 234 Minn. 531, 48 N.W.2d 855, 856 (1951); *Johnson v. City of Hastings,* 241 Neb. 291, 488 N.W.2d 20, 24 (1992); *Middletown v. McGee,* 39 Ohio St.3d 284, 530 N.E.2d 902, 905 (1988); *Watson, supra* note 44 at 775; *City of Rapid City v. Anderson,* 612 N.W.2d 289, 293 (S.D.2000); *Town of Mt. Pleasant, supra* note 44, at 759. For a contrary view that a "corridor" annexation does not violate the statutory requirement of contiguity, *see Glick v. Town of Gilbert,* 123 Ariz. 395, 599 P.2d 848, 851–52 (App.1979); *State ex rel. Averna v. City of Palm Springs,* 51 Cal.2d 38, 331 P.2d 4, 8–9 (1958); *Bryant v. City of Charleston,* 295 S.C. 408, 368 S.E.2d 899, 901 (1988); *City of Wichita Falls v. State ex rel. Vogtsberger,* 533 S.W.2d 927, 930 (Tex.1976). Some state statutes expressly permit strip annexation. *See, e.g.,* Colo.Rev.Stat. § 21–12–105(e)(Supp.1989) (strip annexations are authorized if the strip is no longer than three miles).

**48.** *Garrett v. City of Oklahoma City,* 1979 OK 60, ¶ 5, 594 P.2d 764, 766; *Botchlett v. City of Bethany,* 1966 OK 39, ¶ 15, 416 P.2d 613, 617.

**49.** *Jones v. City of Oklahoma City,* 1952 OK 354, 250 P.2d 17, 20, 207 Okl. 431.

For a discussion of the distinction between the burden of producing evidence and the burden of persuasion, see *Harder v. F.C. Clinton, Inc.,* 1997 OK 137, ¶ 8, 948 P.2d 298, 303; 2 L. WHINERY, OKLAHOMA EVIDENCE §§ 8.01–8.06 (2d ed.1994). *See also Director, OWCP v. Greenwich Collieries,* 512 U.S. 267, 272, 114 S.Ct. 2251, 2255–2258, 129 L.Ed.2d 221 (1994), for a scholarly discussion of the distinction between burden of persuasion and that of evidence production.

**50.** The shifting of burdens in a municipal annexation contest is somewhat analogous to the bailment law's allocation of burdens. When the fact of bailment and the return of the bailed property in a damaged condition is admitted, the burden of going forward with the evidence **(but not the burden of persuasion)** then shifts to the defendant-bailee to show that the damage did not result from bailee's failure to use due care. The due care proof constitutes a defense against a claim based on bailment. *City of Enid v. Reeser,* 1960 OK 191, ¶ 11, 355 P.2d 407, 409; *Parkade Corporation v. Chehock,* 1957 OK 151, ¶ 8, 312 P.2d 932, 934–35; *Oklahoma City Hotel Co. v. Levine,* 1941 OK 268, ¶ 10, 116 P.2d 997, 999, 189 Okl. 331; *Standard Marine Ins. Co., Limited, of Liverpool v. Traders' Compress Co.,* 1915 OK 284, ¶ 0 syl., ¶ 8, 148 P. 1019, 1020–21, 46 Okl. 356. *See also in this connection Volvo White Truck Corp. v. Vineyard,* 239 Va. 87, 387 S.E.2d 763, 766–67 (1990).

**51.** The protestants of a municipal annexation bear the burden of showing noncompliance with either the statutory annexation standards or the unreasonable features of the annexation process. By showing an unreasonably narrow connecting strip, protestants establish prima facie failure of evidentiary support for the judicial declaration of validity. **While the burden of persuasion remains on the protestants, the burden of going forward with the evidence shifts to the city to prove there was in fact due compliance with the law.** If the city does not assume its burden of going forward with the evidence, there would arise a failure of proof (on the point of reasonableness), **which, in this case, would deprive the summary disposition for the City of the required legal support for a judicial declaration of validity.**

indicates the 3–foot–wide strip in question was needed to connect to the municipality the other tracts along the highway corridor. One City official described the strip as "an umbilical cord to tie it together." **Two City officials stated they knew of no other use for the strip. When asked whether a water line could be laid under the strip, another City official answered "probably not."**

¶ 26 The individual tracts standing alone would clearly not meet the statutory definition of contiguity (or adjacency). Not only are they located several miles from the city limits, some of the tracts are situated a number of miles from each other. The narrow 3–foot–wide strip provides the only link between the city's boundaries and the individual tracts owned by the protestants.

## VI

### SUMMARY

 ¶ 27 The alteration of municipal boundaries is a state sovereign power which the Legislature has delegated to municipalities. A city's extension of its territorial limits by ordinance constitutes a legislative function of its governing body which stands subject to judicial review to determine whether the city has met the state annexation-law standards in a reasonable manner.

 ¶ 28 The words "contiguous" or "adjacent" within the meaning of the annexation statute are flexible terms that may be affected by the facts of a case. A corridor-style annexation by which remote territories are connected to the existing city limits by a narrow 3–foot–wide strip of territory does not satisfy the legislatively crafted contiguity standard. When no beneficial municipal purpose is shown for a connecting strip that is as narrow as 3 feet in width, the burden of proof but not that of persuasion shifts to the municipality to show that the narrow strip will confer a beneficial use beyond its advantage of providing a mere connective territorial link to otherwise remote noncontiguous tracts.

¶ 29 Because the record fails to show any useful municipal purpose for the connecting

strip other than to establish technical or merely illusory contiguity of the city limits with distant and disconnected territories along the highway corridor, Ordinance 941 is subject to invalidation for want of compliance with the statutory contiguity standards.

¶ 30 On certiorari previously granted upon the protestants' petition, the Court of Civil Appeals' opinion is vacated and the trial court's order declaring annexation Ordinance 941 valid is reversed with directions to declare that ordinance inefficacious.

¶ 31 OPALA, V.C.J., LAVENDER, KAUGER, BOUDREAU, WINCHESTER, EDMONDSON, JJ., and SIMMS, S.J., concur.

¶ 32 WATT, C.J., and HODGES, J., dissent.

¶ 33 HARGRAVE, J., disqualified.

WATT, C.J., with whom HODGES, J. joins, dissenting:

¶ 1 I dissent because it seems to me that there is no way to square the majority opinion here with *Sharp v. Oklahoma City,* 1937 OK 685, 74 P.2d 383; *Town of Luther v. State,* 1967 OK 59, 425 P.2d 986; *City of Claremore v. Town of Verdigris,* 2001 OK 91, 50 P.3d 208; and *Botsford v. City of Norman,* 354 F.2d 491 (10th Cir.1965), which we cited with approval in both *Town of Luther* and *City of Claremore.*

¶ 2 The foregoing opinions make clear that the use by a municipality of the "strip" method to annex additional territory is a political decision with which this Court will not interfere, *regardless of the shape of the annexed property.* For example, in *City of Norman,* the involved strip was sixty-seven feet wide and *fourteen miles long.* We held in *Sharp,* and quoted with approval in *City of Claremore,* "That the extent and shape which the annexed territory shall take is a political and not a judicial decision...." *City of Claremore,* at ¶ 12. There is simply no way to square these opinions with today's majority opinion, which invalidates Seminole's annex-

ation because the involved strip was only three feet wide.

¶ 3 Therefore, I respectfully dissent.